81 U.S. 457
 20 L.Ed. 845
 14 Wall. 457
 UNITED STATES
v.
BALLARD ET AL.
 December Term, 1871
 
 ERROR to the Circuit Court for the Northern District of Ohio; the case being thus:
 A statute of August 30th, 1852,[1] requiring annual licenses for steamboats, after preliminary inspections, examinations, and certificates, enacts by the 31st section:
 'That before issuing the annual license to any such steamer, the collector or other chief officer of the customs for the port or district, shall demand and receive from the owner or owners of the steamer, as a compensation for the inspections and examinations made for the year, the following sums, in addition to the fees for issuing enrolments and licenses now allowed by law, according to the tonnage of the vessel, to wit:
 For each vessel of 1000 tons and over, $35 00
 For each vessel of 500 tons and over, and less than 1000 tons, 30 00
 * * *
 'And each engineer and pilot, licensed as herein provided, shall pay:
 For the first certificate granted by any inspector or inspectors, the sum of $5 00
 And for each subsequent certificate 1 00
 to such inspector or inspectors, to be accounted for and paid over to the collector or other chief officer of the customs; and the sums derived from all the sources above specified shall be quarterly accounted for and paid over to the United States in the same manner as other revenue.'
 In February, 1857, the Treasury Department promulgated certain general regulations under the revenue laws, in which, after stating some other fees, the above-quoted enactments were set forth as part, thus:
 'The following enumerated fees are still to be charged and collected at such ports, and accounted for and paid over to the United States by collectors in the same manner as other revenue:
 For admeasuring every vessel in order to the enrolment or licensing and recording the same:
 If of 5 tons and less than 20, $0 30
 Of over 20 and not over 70, 1 00
 Over 70 and not over 100, 1 50
 For certificate of enrolment, 50
 For indorsement on certificate of enrolment, 20
 For license, and granting the same, including the bond:
 If not over 20 tons, 25
 Above 20 and not over 100, 50
 Over 100 tons, 1 00
 For indorsement on a license, 20
 For permit to land goods, 20For licenses to steamers, as a compensation for the inspections and examinations made for the year under the steamboat law, approved August 30th, 1852, in addition to the fees above mentioned, for issuing enrolments and licenses to vessels:
 For each vessel of 1000 tons and over, $35 00
 For each of 500 and over, but less than 1000 tons, 30 00
 * * *
 For the first certificate granted by an inspector or inspectors to each engineer and pilot, 5 00
 For each subsequent certificate, 1 00
 But the regulations called the attention of collectors and other officers of customs to the amount and limit of fees in a great variety of other matters, the regulations occupying several pages.
 On the 17th June, 1864,[2] Congress enacted:
 'That each of the several collectors of customs in the following districts on the said frontiers, to wit: Cuyahoga, &c., &c., shall receive an annual compensation of $1000, and in addition thereto the fees now collected under the general regulations of the Treasury Department of February, 1857, and a commission of 3 per centum on all moneys collected and accounted for by them respectively: Provided, That the aggregate compensation derived from salary, fees, and commissions, shall not in any case exceed the sum of $2500. . . . And whenever the aggregate of salary, fees, and commissions shall in any case exceed the said sum of $2500, after deducting the necessary expenses incident to the said office, for during the same period for which said compensation is allowed, the excess shall, in every such case, be paid into the Treasury of the United States. The fees and emoluments of all kinds to be accounted for as provided by the 12th section of the act of 7th of May, 1822.'
 This 12th section of the act of 7th of May, 1822,[3] enacts that collectors, &c., shall account, under oath, for all fees and emoluments of office, and in such manner as the Secretary of the Treasury shall prescribe.
 These treasury regulations of February, 1857, and this act of 17th June, 1864, being in force, the United States brought suit on the official bond of one Ballard, collector at Cuyahoga, assigning as breach his non-payment to the government of moneys received according to law from the owners of steamboats, or compensation for inspection and examination, and of moneys received by him according to law for certificaties of engineers and pilots. The defendant pleaded nil debet, concluding to the country, and a special plea of confession and avoidance, founded on the above-quoted statute of June 17th, 1864, and asserting that the fees for which he was sued were fees collected under the said general regulations of the treasury, of February, 1857, and such as he had a lawful right to retain; the whole, with commissions of 3 p. c. on moneys collected and accounted for, amounting to but $2322.
 Upon the first plea issue was joined; to the second, the plaintiff filed a general demurrer, and the defendant his joinder therein. The Circuit Court overruled the demurrer, and thereupon, without disposing of the issue to the country, rendered judgment for the defendant. Thereupon the government brought the judgment here; the general question in the case being whether, in view of the 2d section of the act of June 17th, 1864, the collectors of the customs mentioned in that act were entitled to retain for their own use moneys received by them from the owners of steamers, and from engineers and pilots, by virtue of the 31st section of the act of August 30th, 1852. A minor point of pleading (arising from the fact that the court below did not send the case to the jury on the issue joined on the first plea) being also raised.
 
 Mr. B. H. Bristow, Solicitor-General, for the United States, plaintiff in error:
 
 1. There is clearly kept up in the treasury regulations of 1857 the distinction between the moneys collected under the act of 1852, and other collections enumerated in the regulations. We do not maintain that the collector has retained more than the maximum compeusation allowed by the act of 1864, but only that the amount thus retained by him is made up partly from moneys which he was not entitled to appropriate to his own use. He does not pretend to have derived any right to such moneys from the treasury regulations, or from any prior statute, but rests his claim upon the act of 1864, and insists that under it he is entitled to appropriate to his own use certain moneys which by prior statute and the treasury regulations were specifically required to be paid into the treasury as other revenue, and were clearly appropriated to other uses. What is there in the language of the act of 1864 to indicate an intention on the part of Congress to repeal the provision of the act of 1852 in this respect? It cannot be argued that so much of the act of 1852 as appropriates the moneys in question to another use, and requires them to be paid into the treasury 'as other revenue,' is repealed otherwise than by implication. The act of 1852 is not referred to in the act of 1864, and there is nothing in the statute itself to indicate that the subject-matter of the former act was present in the mind of the legislature when the latter was adopted. Nor is the latter in any sense repugnant to the former. The act of 1852 relates exclusively to the payment, by owners of steamers, engineers, and pilots, of certain sums of money as compensation for the services of inspectors, and the only connection of collectors therewith is in the duty imposed upon them to receive the money and pay it into the treasury as other revenue. The act of 1864 relates exclusively to the compensation of collectors, and the chief purpose in view was to change the maximum compensation of collectors of the enumerated districts. Full effect can be given the latter without in any respect disturbing the former. The two may well subsist together, and in such case repeal by implication cannot be allowed.[4]
 2. Nil debet is not a sufficient plea to an action of debt on a bond setting out the condition and breach, and it may be conceded that the plaintiff below should have demurred to this plea. However, an issue having been framed on that plea the court ought not to have treated that issue as immaterial, and rendered judgment for the defendants on the whole case upon sustaining the demurrer to the last plea, but should have allowed the parties to go to the jury upon the issue joined on the first plea.
 Mr. A. G. Riddle, contra, submitted that the case was a plain one every way, and he presented arguments which need not be here printed, as they were in substance adopted as true by the court.
 The CHIEF JUSTICE delivered the opinion of the court.
 
 
 1
 The question is whether the description of fees now collected under the general regulations of the Treasury Department of February, 1857, includes the sums collected under these regulations for licenses to steamers, and as compensation for the inspections and examinations made for the year under the Steamboat Act of August 30th, 1852, in addition to the fees for issuing enrolments and licenses.
 
 
 2
 These sums are collected as fees under the regulations, and are not distinguished from the collector's fees proper, except by the circumstance that they are described as a compensation for inspections and examinations. The provision, that these sums shall be quarterly accounted for and paid over to the United States, does not distinguish them from fees and emoluments to be accounted for under the act of the 17th of June, 1864, or under the regulations of the Treasury Department of February, 1857.
 
 
 3
 The language of the regulations is, that the fees are to be charged, and collected, and accounted for, and paid over to the United States by collectors, in the same manner as other revenue. This language obviously means that they are to be accounted for in all cases, and paid over, unless retained under authority of law. The act of June 17th, 1864, authorizes the collector to retain the fees and a commission of three per cent. on moneys collected and accounted for, paying over to the Treasury only the excess beyond two thousand five hundred dollars; and there is no distinction in the regulations between the fees for admeasurement, licenses, &c., and the fees for licenses as a compensation for inspections and examinations.
 
 
 4
 We think, therefore, that the collector was authorized to retain all descriptions of fees paid him not in excess of two thousand five hundred dollars. It follows that the demurrer was properly overruled; and, as the defendant did not think it proper to reply, but allowed judgment to be entered upon the plea, the other plea of nil debet became immaterial, and the judgment was properly entered for the defendant.
 
 
 5
 It is, therefore,
 
 
 6
 AFFIRMED.
 
 
 
 [1]
 10 Stat at Large, 73.
 
 
 [2]
 13 Stat. at Large, 134.
 
 
 [3]
 3 Id. 695.
 
 
 [4]
 Henderson's Tobacco, 11 Wallace, 652; The Distilled Spirits, Id. 356.