## JONES v. FLORIDA C. & P. R. Co. et al.

*(Circuit Court, S. D. Florida. December 14, 1889.)*

1. FEDERAL COURTS—FEDERAL QUESTION—EMINENT DOMAIN—TITLE OF OCCUPANT.
   Under Act Cong. 1875, giving circuit courts jurisdiction in all cases "arising under the constitution or laws of the United States," such courts have jurisdiction of a bill for an injunction to restrain a railroad company from extending its road across land belonging to the United States, and to which the complainant claims to have an equitable title as a pre-emptor, where the question in dispute is whether complainant has a right to the land under the land laws of the United States.

2. SAME—REMEDIES—INJUNCTION.
   Where the complainant's title is under consideration in the land-office, the railroad company will be enjoined from entering upon the land until it has taken proceedings to condemn the land, and has given security for the payment of the appraised damages as soon as complainant's title shall have been determined in the land-office.

In Equity.

*S. Y. & Lucius Finley,* for complainant.

*Joseph B. Wall,* for defendants.

LOCKE, J. This is a bill asking an injunction to restrain defendant company from building its road and laying its track across a piece of land occupied by plaintiff, and in which he claims he has an equitable estate and interest sufficient to justify this action. The piece of land across which the right of way is in controversy is a portion of the Ft. Brooke reservation, adjoining the city of Tampa. It was originally held by the United States for military purposes, but it is alleged by plaintiff, and conceded by defendant, that it had been transferred from the war to the interior department, and therefore became a part of the ordinary public lands of the United States, subject to entry under the general land laws. The bill alleges that plaintiff entered upon the land with the intent and purpose of making a home thereon, and securing title to the same; that he has made efforts to obtain title; that his application is now pending, and being investigated by the land department of the United States; that he has possession of and is residing upon it; and that by reason of these facts he has equitable title to and claims the same under and by virtue of the laws of the United States. The affidavits filed by defendant show that complainant had filed a declaratory statement for the purpose of pre-empting said land; that under an order of the commissioner of the general land-office a hearing has been recently had, and testimony taken, but that no decision has been rendered thereon; that there are many contests over the rights to enter and purchase said reserved lands, and that no decision on the merits of the several contestants has been made by the executive department of the government. A letter from the local land-office has been presented, showing that the plaintiff is recognized as one of the claimants to rights in the land, and that the case is being investigated. Defendant's affidavits also show that, under a charter and laws of the state, it has surveyed, and is constructing, a railroad to the waters of Tampa bay, and that crossing the land in question is the only practicable way of entering the city of Tampa,

where there can be obtained necessary room for side tracks and ware-houses for the operations of the railroad, and that the location is absolutely essential to the company.

These allegations of the bill and affidavits show clearly that there is but one important question in the case, and that is the right plaintiff has in the land entered upon. He claims rightful possession and equitable title under the laws of the United States, and defendant denies that his rights under such claim are sufficient to justify a negotiation with him for the right of way, or to prevent its entering upon and occupying the land without compensation. This question can only be determined by an examination and construction of the United States land laws, and the federal courts have jurisdiction where such examination and construction is demanded. The act of congress of 1875, which conferred upon the circuit court jurisdiction in all cases "arising under the constitution or laws of the United States," and which has so frequently received judicial interpretation from the supreme court, was not changed by the act of 1887 in that particular. It has been repeatedly decided that a suit may properly be said to arise under the constitution or a law of the United States, whenever its correct decision depends on the construction of either; that cases arising under the laws of the United States are such as grow out of the legislation of congress, whether this constitute the right, privilege, claim, protection, or defense of the party by whom it is asserted in whole or in part. Wherever the right or remedy sought, or the defense made, depends upon a law of congress, or the construction of the constitution, the act of 1875 unquestionably opened the federal courts to such suitors. This doctrine has been so frequently declared that it requires no further argument. *Cohens* v. *Virginia,* 6 Wheat. 264; *Osborn* v. *Bank,* 9 Wheat. 738; *Mayor* v. *Cooper,* 6 Wall. 247; *Water Co.* v. *Keyes,* 96 U. S. 199; *Tennessee* v. *Davis,* 100 U. S. 257; *Railroad Co.* v. *Mississippi,* 102 U. S. 135.

In this case the title to the land is at present unquestionably in the United States. The plaintiff claims rights through, by, and under the acts of congress for the disposing of public lands, and if he has complied with the laws for that purpose, so as to hold a homestead or pre-emption right, he is entitled to some remedy in this case. How can this question be determined but by an examination and construction of the land laws, and a determination of the equities existing between the United States and plaintiff? Certainly such inquiry should not be referred to a state court. The law has given to the executive of the United States, through the department of the interior, the duty to investigate and determine the title to public lands, and, until such determination has been reached, the courts will not interfere with, anticipate, or forestall such action; but where it appears that any party may have rights, he may be protected in them until final action of the land department may decide the nature, character, and extent of such rights.

While it is plainly within the jurisdiction and duty of this court to protect the plaintiff in any rights it may finally appear that he has, the question naturally arises, how, in this case, shall such protection be

given? Every state has, by virtue of its sovereignty, and right of eminent domain, power to create, by the establishment of railroads, easements upon all lands within its limits, unless specially reserved for purposes of the national government, and such easement would interfere with the purpose for which they were reserved. *U. S.* v. *Bridge Co.*, 6 McLean, 517. So if the lands were unquestionably the property of the United States, without any interfering equities, the defendant would have the right of way, and an injunction would not lie. On the other hand, were the title of plaintiff full and complete, defendant would have a right to institute condemnation proceedings, and, upon paying the compensation awarded, continue its road.

Under the laws of the state, it would seem that the owner has right to demand that the payment be simultaneous with entry. Courts will generally enjoin disseisin of land until compensation has been paid, but, where any question of title is pending investigation, the compensation should be ascertained, and its payment made certain. The owner will not be put to his remedy at law. *Bonaparte* v. *Railroad Co.*, 1 Baldw. 205. Certainly plaintiff can have no greater rights in opposing the progress of the railroad, or turning it aside from the land in question, than he would have had he perfect title in it. The public is interested in the construction of railroads, and it is the policy of the law to assist, rather than impede, and encourage, rather than obstruct, them. The granting an injunction could have but one of two effects,—to prevent any further advance, or to turn the course aside to the land of some one else, who might have as good or better reasons for objecting.

There is no doubt as to the power of the railroad company to acquire the right to continue its surveyed course, regarding the question of title whichever way we may; but the plaintiff may have rights in which he should be protected, although he may have asked more than can be granted. If he has shown a case for relief within its jurisdiction, it is the duty of the court to grant it, although the form of asking may not be critically correct. *Griffing* v. *Gibb*, 2 Black, 519.

The question now to be considered is not whether an injunction may issue, but upon what conditions, so as to protect the plaintiff in his rights without inflicting unnecessary hardship upon the defendant. Upon what conditions should the defendant be permitted to proceed with the road? If there were no question as to the right of title, it would be necessary to have an appraisement, and pay the damage awarded. Defendant has no right to so determine this unsettled question as to deny the possibility of any damage to the plaintiff, and take possession of land which may eventually prove to be his. But this is not the time, nor is this the forum, to determine the amount of damage. This court cannot interfere with the executive department in determining the questions of title which the law submits to it, nor with the practice which the state has established for determining values. When the character and nature of the title is settled under the acts of congress, the amount of damage in this case is considered to call for no further action of a national tribunal.

It is not an unusual proceeding in courts of equity, where questions arise in which time may be taken to determine the value of certain rights, to declare conditions upon which injunctions will be granted or refused. Bonds of indemnity are not only consistent with the general principles of equity, but are in frequent use. *Stewart* v. *Railroad Co.*, 7 Smedes & M. 568; *Floyd* v. *Turner*, 23 Tex. 292; *Railroad Co.* v. *Railroad Co.*, 2 McCrary, 260. This appears to be the only course in this case by which the rights of both parties will be fully protected, and the burden of unusual hardship rest upon neither. Until such bond be given, defendant may be enjoined from proceeding. It is therefore ordered that an injunction issue, as prayed, until the defendant company take steps under the state laws for ascertaining the value of the land taken for railroad purposes, now occupied by plaintiff, and give a bond for payment of the amount of damages awarded, whenever the land-office decides the plaintiff herein is entitled to the land, and a patent issues therefor.