UNITED STATES v. UTAH POWER & LIGHT CO.†

(Circuit Court of Appeals, Eighth Circuit. November 14, 1913.)

No. 3,992.

1. PUBLIC LANDS (§ 7*)—AUTHORITY AND CONTROL OF CONGRESS—ACQUISITION OF PRIVATE RIGHTS.

Under Const. U. S. art. 4, § 3, which vests in Congress "power to dispose of and make all needful rules and regulations respecting the territory or the property belonging to the United States," title or rights in the public lands cannot be acquired by a private person or corporation in the exercise of a state sovereignty, but only by virtue of some act of Congress and in accordance with the procedure prescribed.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 7, 34; Dec. Dig. § 7.*]

2. PUBLIC LANDS (§ 7*)—AUTHORITY AND CONTROL OF CONGRESS—RECOGNITION BY STATE CONSTITUTION.

By the provision of the enabling act and state Constitution of Utah forever disclaiming on the part of the people of the state all right and title to the unappropriated public lands lying within the state, and providing that until the title thereto shall have been extinguished by the United States the same shall be and remain subject to the disposition of the United States, the government's full right of control over such lands is expressly recognized.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 7, 34; Dec. Dig. § 7.*]

3. PUBLIC LANDS (§ 7*) — WATERS AND WATER RIGHTS IN PUBLIC LANDS — ELECTRIC POWER COMPANIES.

Act May 14, 1896, c. 179, § 2, 29 Stat. 120 (U. S. Comp. St. 1901, p. 1573), which specifically authorizes the Secretary of the Interior, under rules and regulations to be fixed by him, to grant right of way and the use of ground on the public lands or forest reservations to electric power companies, as to such companies supersedes, or at least modifies and limits, the general provisions of Rev. St. § 2339 (U. S. Comp. St. 1901, p. 1437), enacted in 1866, recognizing vested water rights and rights of way for ditches and canals acquired in accordance with local customs and laws, to the extent that since its passage rights in public lands can be acquired by such a company only by a grant from the Secretary.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 7, 34; Dec. Dig. § 7.*]

Appeal from the District Court of the United States for the District of Utah; John A. Marshall, Judge:

Suit in equity by the United States against the Utah Power & Light Company. Decree for defendant, and complainant appeals. Reversed.

See, also, 208 Fed. 821.

R. F. Feagans, Assistant Solicitor Department of Agriculture, of Ogden, Utah, and Hiram E. Booth, U. S. Atty., of Salt Lake City, Utah (William M. McCrea, Asst. U. S. Atty., of Salt Lake City, Utah, on the brief), for the United States.

Dwight W. Morrow, of New York City, and E. M. Allison, Jr., of Salt Lake City, Utah (S. A. Bailey, of Salt Lake City, Utah, Clyde C. Dawson, of Denver, Colo., and Waldemar Van Cott and W. D. Riter, both of Salt Lake City, Utah, on the brief), for appellee.

William V. Hodges, of Denver, Colo. (Mason A. Lewis, of Denver, Colo., on the brief), amicus curiæ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied February 23, 1914.

Before HOOK and CARLAND, Circuit Judges, and VAN VALK-
ENBURGH, District Judge.

VAN VALKENBURGH, District Judge.   The United States brings
its bill of complaint against the appellee, defendant below, by which
it seeks perpetually to enjoin said defendant from maintaining, in
whole or in part, an alleged unlawful and tortious possession and oc-
cupancy of certain public lands in Cache county, state of Utah, now
forming a part of the Cache National Forest.

Appellee is a corporation organized for the purpose of supplying
electrical power to all who may desire to purchase and use it.   Since
December, 1900, it, and its predecessor in interest, have been engaged
in the continuous operation of certain hydro-electrical power works,
situated on the Logan river in the county and state aforesaid.   These
works comprise a reservoir and a flume or conduit for conveying the
flow of water from the reservoir to the power works, pressure
pipes, and power house station, all equipped with the necessary
machinery and apparatus.   The reservoir, flume, and conduit are sit-
uated wholly upon and within the lands of the United States.

It is alleged in the bill that the defendant power company holds no
permission for the construction, maintenance, or use of said reservoir,
flume, or conduit, nor any permission or authority to occupy or use said
lands for the purposes stated from the United States or from any of
its officers duly empowered by law to issue or grant the same; this,
of course, stands admitted.   Appellee claims to have acquired what-
ever rights it possesses under and by virtue of the customs, laws, and
decisions of the state of Utah, as recognized and confirmed by section
9 of the act of Congress of July 26, 1866, appearing as section 2339 of
the Revised Statutes (U. S. Comp. St. 1901, p. 1437) as follows:

"Whenever, by priority of possession, rights to the use of water for min-
ing, agricultural, manufacturing or other purposes, have vested and accrued,
and the same are recognized and acknowledged by the local customs, laws,
and the decisions of courts, the possessors and owners of such vested rights
shall be maintained and protected in the same; and the right of way for
the construction of ditches and canals for the purposes aforesaid is hereby
acknowledged and confirmed: Provided, however, that whenever, after the
passage of this act, any person or persons shall, in the construction of any
ditch or canal, injure or damage the possession of any settler on the public
domain, the party committing such injury or damage shall be liable to the
party injured for such injury or damage."

The government claims:   (1) That rights of way for power com-
panies cannot be acquired under this act, because such companies and
their purposes were not contemplated by Congress at the time of the
enactment of these laws, and were not, therefore, within the intent
and meaning of those acts.   (2) That in any event Congress has since
made specific and comprehensive provisions defining the procedure by
which, and the extent to which, the use of the public lands may be
granted and acquired for the purposes of generating, manufacturing,
and distributing electric power; that this legislation withdraws such
uses from the terms of section 2339 of the Revised Statutes, if they
were ever included therein.   The legislation referred to is that of May

14, 1896, c. 179, 29 Stat. 120 (U. S. Comp. St. 1901, p. 1573), which reads as follows:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that the act entitled 'An act to permit the use of the right of way through the public lands for tramroads, canals, and reservoirs, and for other purposes,' approved January twenty-first, eighteen hundred and ninety-five, be, and the same is hereby, amended by adding thereto the following:

"Sec. 2. That the Secretary of the Interior be, and hereby is, authorized and empowered, under general regulations to be fixed by him, to permit the use of right of way to the extent of twenty-five feet, together with the use of necessary ground, not exceeding forty acres, upon the public lands and forest reservations of the United States, by any citizen or association of citizens of the United States, for the purposes of generating, manufacturing, or distributing electric power."

The government's position is that this act, of subsequent adoption, making specific and comprehensive regulations respecting a subject conceived to be embraced within the terms of the prior more general act, withdraws that subject from the operation of the former act to the extent to which it is governed by the special provision and is pro tanto a substitute for the general statute formerly governing the subject-matter. Under the authority of this act, the Secretary of the Interior fixed and promulgated general regulations; and it is contended that since that time, as against the United States, no rights could be acquired in the public lands for purposes of generating, manufacturing or distributing electric power except in conformity with the act of 1896 and the procedure thus established. The exclusive control of Congress over the disposition of the public lands is asserted. The alleged rights of appellee were attempted to be created since the passage of the act of 1896, and the regulations promulgated thereunder, to wit, in December, 1900.

A motion to dismiss, substituted under the new equity rules for demurrer, was filed by appellee. The court below, being of opinion that the defendant had title to a right of way for its pipe lines and reservoirs under section 9 of the act of July 26, 1866, and was therefore under no obligation to proceed under the subsequent legislation, sustained this motion and dismissed the bill.

It is suggested, rather than insisted, that appellant is not entitled to equitable relief because its remedy at law is complete and adequate. This point, though raised in the briefs for appellee, was not urged at the oral argument. While ejectment would seem to afford adequate relief, nevertheless the proceeding in equity has been recognized and approved. United States v. Brighton Ranche Co. (C. C.) 26 Fed. 218; Light v. United States, 220 U. S. 523, 31 Sup. Ct. 483, 55 L. Ed. 570. However, we agree with the trial judge that under the new equity rules the objection, if well taken, does not justify a dismissal, and that the question therefore need not be determined.

[1] From the briefs the claim of right asserted by appellee would seem to be twofold in its nature: First. That the power company is entitled to be maintained and protected, so long as it may desire, in the use of rights of way over the public land, which it claims to have acquired for the purpose of putting water to a beneficial use under the

customs, laws and decisions of the state of Utah, as recognized and confirmed by section 9 of the act of Congress of July 26, 1866, Revised Statutes U. S. sec. 2339; that by said act and by the construction ·and use of its reservoir and flume, it has permission of the highest and most solemn kind from the United States government to occupy the land in question. Second. That it is protected in its tenure because that tenure is authorized by the laws of the state of Utah, exercising sovereign and exclusive jurisdiction with respect thereto.

The proposition that absolute and perpetual rights in the public lands may be acquired for private gain by mere appropriation, without purchase or compensation, and in the exercise of a state sovereignty which transcends the constitutional power of the Congress, is a somewhat startling one, and must be considered first. The Constitution of the United States (article 4, § 3) provides that:

"Congress shall have power to dispose of and make all needful rules and regulations respecting the territory or the property belonging to the United States."

This is the supreme law of the land and embodies an express grant of power to the national government. Light v. United States, 220 U. S. 537, 31 Sup. Ct. 483, 55 L. Ed. 570; Kansas v. Colorado, 206 U. S. 89, 27 Sup. Ct. 655, 51 L. Ed. 956. It has been construed to mean that title and rights in and to the public lands are created by the acts of Congress, and must be governed by their provisions whether they be hard or lenient, and that no rights whatsoever can be obtained in the lands of the United States except as Congress may consent. Rector v. Ashley, 6 Wall. 142, 18 L. Ed. 733; Frisbie v. Whitney, 9 Wall. 187, 19 L. Ed. 668; Emblem v. Lincoln Land Co., 184 U. S. 660, 22 Sup. Ct. 523, 46 L. Ed. 736; Wilcox v. Jackson, 13 Pet. 498, 10 L. Ed. 264; Jourdan v. Barrett, 4 How. 169, 11 L. Ed. 924; United States v. Chicago, 7 How. 185, 12 L. Ed. 660; Butte City Water Co. v. Baker, 196 U. S. 119, 25 Sup. Ct. 211, 49 L. Ed. 409; Kansas v. Colorado, 206 U. S. 46–92, 27 Sup. Ct. 655, 51 L. Ed. 956; Light v. United States, supra. After quoting this provision of the Constitution, the Supreme Court, in Jourdan v. Barrett, 4 How. at page 184, 11 L. Ed. 924, said:

"For the disposal of public lands, therefore, in the new states, where such lands lie, Congress may provide by law; and having the constitutional power to pass the law, it is supreme; so Congress may prohibit and punish trespassers on the public lands. Having the power of disposal and of protection, Congress alone can deal with the title, and no state law, whether of limitations or otherwise, can defeat such title."

Wilcox v. Jackson dealt with public lands within the state of Illinois. Concerning the asserted power of the state to legislate respecting the title to such lands within its borders, the court said:

"The effect of this would be, not that Congress had the power of disposing of the public land, and prescribing the rules and regulations concerning that disposition, but that Illinois possessed it. That would be to make the laws of Illinois paramount to those of Congress, in relation to a subject confided by the Constitution to Congress only. And the practical result in this very case would be, by force of state legislation, to take from the United States their own land, against their own will, and against their own laws."

In Camfield v. United States, 167 U. S. 518, 17 Sup. Ct. 864, 42 L. Ed. 260, it was held that the government of the United States may legislate for the protection of its lands, though such legislation may involve the exercise of the police power; and may complain of and take steps to prevent acts of individuals, in fencing in its lands, even though done for the purpose of irrigation and pasturing. In the opinion Mr. Justice Brown, speaking for the court, said:

"While the lands in question are all within the state of Colorado, the government has, with respect to its own lands, the rights of an ordinary proprietor, to maintain its possession and to prosecute trespassers. It may deal with such lands precisely as a private individual may deal with his farming property. It may sell or withhold them from sale. It may grant them in aid of railways or other public enterprises. It may open them to pre-emption or homestead settlement; but it would be recreant to its duties as trustee for the people of the United States to permit any individual or private corporation to monopolize them for private gain, and thereby practically drive intending settlers from the market."

In Light v. United States, supra, the United States had suffered its public lands to be used for pasturage; and there thus grew up a sort of implied license that these lands might be used so long as the government did not withdraw its consent. The court held that:

"Failure to object, however, did not confer any vested right on the complainant, nor did it deprive the United States of the power of recalling any implied license under which the land had been used for private purposes."

It held further that:

"The United States can prohibit absolutely or fix the terms on which its property may be used. As it can withhold or reserve the land, it can do so indefinitely."

[2] But it is profitless to discuss further this asserted power of the state to dispose of interests in the public lands, even though it were admitted that the subject otherwise admits of discussion, in view of the express stipulation that such lands shall remain at the sole and entire disposition of the United States. The act enabling the people of Utah to form a Constitution and state government imposes the condition:

"That the people inhabiting said proposed state do agree and declare that they forever disclaim all right and title to the unappropriated public lands lying within the boundaries thereof; * * * and that until the title thereto shall have been extinguished by the United States, the same shall be and remain subject to the dispositon of the United States." Compiled Laws of Utah 1907, p. 29.

And in the Constitution of Utah subsequently adopted this provision was incorporated in terms and became a part of the organic law of that state. Constitution of Utah, art. 3, § 2; Compiled Laws of Utah 1907, p. 45. Concerning a similar provision in the Minnesota Constitution, the Supreme Court has said:

"The provisions of the enabling act and the state Constitution, before referred to, secure to the United States full control of the disposition of the public lands within the limits of the state. * * * It would be a part of the power reserved in Congress to determine the terms and conditions upon which title should effectually pass from the government." Stearns v. Minnesota, 179 U. S. 223–251, 21 Sup. Ct. 73, 84 (45 L. Ed. 162).

That a power may be injuriously exercised is no reason for a misconstruction of the scope and extent of that power. The government of the United States has shown no disposition to deal unjustly with the states, nor with their citizens in this respect. Stearns v. Minnesota, supra, 179 U. S., page 243, 21 Sup. Ct. 73, 45 L. Ed. 162; Oceanic Navigation Co. v. Stranahan, 214 U. S. 320, 29 Sup. Ct. 671, 53 L. Ed. 1013. We must conclude therefore that the power of Congress to dispose of and make all needful rules and regulations respecting the territory, or other property belonging to the United States, including rights of the nature here involved, is supreme; and, in conferring upon the Secretary of the Interior power to establish such rules and regulations as may be necessary to supplement its legislation, Congress acts within its constitutional power. United States v. Grimaud, 220 U. S. 506, 31 Sup. Ct. 480, 55 L. Ed. 563; Light v. United States, 220 U. S. 523, 31 Sup. Ct. 485, 55 L. Ed. 570; Oceanic Navigation Co. v. Stranahan, 214 U. S. 320, 29 Sup. Ct. 671, 53 L. Ed. 1013. The exertion by Congress of a power which is granted in express terms must supersede all legislation over the same subject by the states. Michigan Central R. R. Co. v. Vreeland, 227 U. S. 59–66, 33 Sup. Ct. 192, 57 L. Ed. 417; Railway v. Hesterly, 228 U. S. 702, 33 Sup. Ct. 703, 57 L. Ed. 1031; Gulf, Colorado & Santa Fé Ry. Co. v. Hefley, 158 U. S. 98–104, 15 Sup. Ct. 802, 39 L. Ed. 910.

[3] To sustain its contention, therefore, appellee must point to some express grant by the government, or at least to subsisting legislation from which the grant may be inferred, or by which its claims have been recognized and preserved. It must be conceded at the outset that statutes granting privileges or relinquishing rights of the public are to be strictly construed against the grantee. Wisconsin Central R. Co. v. United States, 164 U. S. 190, 17 Sup. Ct. 45, 41 L. Ed. 399; Camfield v. United States, 167 U. S. 518, 17 Sup. Ct. 864, 42 L. Ed. 260; United States v. Minidoka & S. W. R. Co. (C. C. A.) 190 Fed. 491, 111 C. C. A. 323. Appellee relies upon the ninth section of the act of July 26, 1866, now section 2339 of the Revised Statutes. It is important to consider the nature and extent of the rights which that legislation undertook either to confer or to confirm, as the case may be. In Jennison v. Kirk, 98 U. S. 453, 25 L. Ed. 240, the Supreme Court of the United States had occasion to examine that act with this consideration in mind. Speaking through Mr. Justice Field, it said:

"The position of the plaintiff's counsel is that, of the two rights mentioned in this section, only the right to the use of water on the public lands, acquired by priority of possession, is dependent upon local customs, laws, and decisions of the courts; and that the right of way over such lands for the construction of ditches and canals is conferred absolutely upon those who have acquired the water right, and is not subject in its enjoyment to the local customs, laws, and decisions. This position, we think, cannot be sustained. The object of the section was to give the sanction of the United States, the proprietor of the lands, to possessory rights, which had previously rested solely upon the local customs, laws, and decisions of the courts, and to prevent such rights from being lost on a sale of the lands. * * *

"It merely recognized the obligation of the government to respect private rights which had grown up under its tacit consent and approval. * * *

"Whilst acknowledging the general wisdom of the regulations of miners, as sanctioned by the state and moulded by its courts, and seeking to give

title to possessions acquired under them, it must have occurred to the author, as it did to others, that if the title of the United States was conveyed to the holders of mining claims, the right of way of owners of ditches and canals across the claims, although then recognized by the local customs, laws, and decisions, would be thereby destroyed, unless secured by the act."

It will thus be seen that this legislation constituted no grant of specific rights by the Congress of the United States. The efficacy of local customs, laws, and decisions to supersede the disposing power of Congress is denied. The purpose was to confirm title to possessions acquired under forms and regulations sanctioned by the state and moulded by its courts, with the acquiescence and tacit encouragement of the government. The act "was rather a voluntary recognition of a pre-existing right of possession, constituting a valid claim to its continued use, than the establishment of a new one." Broder v. Water Co., 101 U. S. 274, 25 L. Ed. 790; Atchison v. Peterson, 20 Wall. 507–512, 22 L. Ed. 214. In view of the express power conferred upon Congress by the Constitution, and reserved to it by the organic law of the state of Utah, it cannot be successfully urged that such legislation committed the government to a policy that should be irrevocable. Light v. United States, 220 U. S. 523–535, 31 Sup. Ct. 485, 55 L. Ed. 570; Gutierres v. Albuquerque Land & Irrigation Co., 188 U. S. 545, 23 Sup. Ct. 338, 47 L. Ed. 588; United States v. Rio Grande Dam & Irrigation Co., 174 U. S. 690, 19 Sup. Ct. 770, 43 L. Ed. 1136. In the latter case it was expressly held that the act of September 19, 1890, did operate to modify and restrict section 2339. The court said:

"As this is a later declaration of Congress, so far as it modifies any privileges or rights conferred by prior statutes it must be held controlling, at least as to any rights attempted to be created since its passage; and all the proceedings of the appellees in this case were subsequent to this act."

It remains then to consider whether Congress, prior to any possession acquired by appellee, had withdrawn or limited the recognition accorded by the act of July 26, 1866, to such extent that appellee may not rely upon that act in defense of this action.

As has been stated, the government's position is that the act of May 14, 1896, and the rules and regulations promulgated thereunder, by making specific and comprehensive provision respecting a subject, to wit, the generation, manufacture, and distribution of electric power, conceived to be embraced within the terms of the prior and more general act, withdraws that subject from the operation of the former act to the extent to which it is governed by such special provision and is pro tanto a substitute for and repeal of the general statute which formerly governed. It is a well-settled principle of construction that specific terms covering a given subject-matter will prevail over general language of the same or another statute which might otherwise prove controlling. Kepner v. United States, 195 U. S. 100, 24 Sup. Ct. 797, 49 L. Ed. 114, 1 Ann. Cas. 655; Jackson v. Chicago, R. I. & P. Ry. Co. (C. C. A.) 178 Fed. 432, 102 C. C. A. 159; Gilkeson v. Missouri Pacific Ry Co., 222 Mo. 173, 121 S. W. 138, 24 L. R. A. (N. S.) 844, 17 Ann. Cas. 763.

"If the two are repugnant in any of their provisions, the later act, without any repealing clause, operates to the extent of the repugnancy as a repeal

of the first; and, even where two acts are not in express terms repugnant, yet if the later act covers the whole subject of the first, and embraces new provisions, plainly showing that it was intended as a substitute for the first act, it will operate as a repeal of that act." United States v. Tynen, 11 Wall. 88–92 (20 L. Ed. 153); Daviess v. Fairbairn, 3 How. 636, 11 L. Ed. 760; Tracy v. Tuffly, 134 U. S. 206–223, 10 Sup. Ct. 527, 33 L. Ed. 879.

The doctrine is very comprehensively stated in Hawkins v. Bare, 63 W. Va. 431, 437, 60 S. E. 391–393. It is there said:

"Neither the intention to substitute, nor the intention to create an exception from the general law, depends upon inconsistency between the new or special act and the old or general act, in the sense of repugnancy in terms. It is inconsistency in point of intention, an obvious, but unexpressed, repugnancy. It is a mere question of whether the Legislature intended to make a complete law governing the subject-matter. If that be apparent, there is a substitution or an exception, as the case may be, although there is no express repeal, exception, or substitution; and the two acts might be combined by making the later or special one an addition to the older or general one, and treating it as an amendment, whereby a different result would be obtained. In every case of this kind the two courses are open to the court. Both acts may be allowed to stand and operate together by treating the later or special one as an amendment, and certain results thereby obtained, or the new or special act may be considered a substitute or exception, and the old or general statute thereby set aside either wholly or partially, and a different result so obtained; and the doubt is always resolved by the character of the new act or special provision. Though it fails to denominate itself a substitute or exception in terms, the intent to make it such is gathered from its scope and character and carried into effect."

The government does not contend that section 2339 of the Revised Statutes has been wholly repealed, but merely that the subsequent act of 1896 has withdrawn from the operation of that section the subject of generating, manufacturing, or distributing electric power, the manner of acquiring rights of way over the public lands for those purposes, and the nature and extent of such rights. We think this contention is sound. The terms of the original statute are broad enough to include the specific form of manufacture now under consideration. Pollock v. Farmers' Loan & Trust Co., 158 U. S. 601–632, 15 Sup. Ct. 912, 39 L. Ed. 1108. Control over the disposition of the public lands and all rights and interests therein, remain unimpaired in the Congress. Evidently that body perceived that the time had come when changed conditions and the complex interests and relations of our national life demanded that, with respect to this particular form of industry, the application of the former act, as worded and construed, should be modified and restricted; therefore it enacted the subsequent legislation. United States v. Rio Grande Dam & Irrigation Co., 174 U. S. 690–708, 19 Sup. Ct. 770, 43 L. Ed. 1136; Camfield v. United States, 167 U. S. 518–524, 17 Sup. Ct. 864, 42 L. Ed. 260.

There can be no doubt that Congress intended to and did assume complete control of the subject-matter, and made and authorized specific and comprehensive provisions respecting it. This appears not only from the act in question, but from other legislation connected therewith and supplemental thereto. Act of March 3, 1891, 26 Stat. 1095 (U. S. Comp. St. 1901, p. 1535); Act of January 21, 1895, 28

209 F.—36

Stat. 635 (U. S. Comp. St. 1901, p. 1572); Act of May 11, 1898, 30 Stat. 404 (U. S. Comp. St. 1901, p. 1575); Act of February 15, 1901, 31 Stat. 790 (U. S. Comp. St. 1901, p. 1584); Act of February 1, 1905, 33 Stat. 628 (U. S. Comp. St. Supp. 1911, pp. 630, 635, 636, 716); Act of March 4, 1911, c. 238, 36 Stat. 1235–1253 (U. S. Comp. St. Supp. 1911, pp. 103, 106, 107, 656, 657, 720, 1030, 1374, 1375, 1391). Laws passed subsequently to appellee's possession cannot, of course, affect any vested rights theretofore acquired, but, they are pertinent as reflecting and revealing the purpose of Congress throughout this legislation. The acts of 1891, 1901, and 1911, contain express provisions for revocation or forfeiture. In that of 1891 is found this exception:

"The privilege herein granted shall not be construed to interfere with the control of water for irrigation and other purposes under the authority of the respective states or territories."

Obviously, that act was not intended to interfere with the operation of section 2339; but no such proviso is found in the act of May 14, 1896. That of May 11, 1898, contains this clause:

"Said rights of way may be used for purposes of water transportation, for domestic purposes, or for the development of power, as subsidiary to the main purpose of irrigation."

It will thus be seen that Congress has wisely adapted and molded its legislation to meet the requirements of irrigation in a "dry and thirsty land."

The result is that whatever rights to burden the public lands may have been recognized or confirmed by section 2339 of the Revised Statutes, those involving the generation, manufacture, and distribution of electric power have been withdrawn, modified, and restricted by the subsequent act of May 14, 1896. This later legislation became effective prior to the initiation of appellee's claim. The power company has not availed itself of the provisions of this later statute; therefore its rights, if any, are subordinate to those of the government.

The decree below must be reversed, and the case remanded for further proceedings in accordance with the views herein expressed.