### UNITED STATES v. COLORADO POWER CO.

(District Court, D. Colorado.   January 8, 1916.)

No. 5853.

1. WATERS AND WATER COURSES ☞27—EASEMENTS ON PUBLIC LANDS— RIGHTS.

Defendant's predecessors applied, under Act Feb. 15, 1901, c. 372, 31 Stat. 790 (Comp. St. 1913, § 4946), to the Secretary of the Interior for a permit to enter upon the public domain and there construct a diversion dam and plant for the generation of electricity.   The Secretary, in granting permission, expressed his consent to the use of the right of way shown upon the map in accordance with the provisions of the act.   *Held*, that defendant, having succeeded to the rights of its predecessors, was not entitled to greater rights than they obtained, and could not justify its use of the public domain under earlier statutes;   the application being confined to the act of 1901.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 19.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. WATERS AND WATER COURSES ☜27—PUBLIC DOMAIN—GRANTS OF RIGHTS OF WAY.

Under Act Feb. 15, 1901, authorizing and empowering the Secretary of the Interior under general regulations to be fixed by him to permit the use of rights of way through the public lands, forests, and other reservations of the United States for electrical plants, poles, and lines, for the generation and distribution of electrical power and for canals, etc., and for water plants, dams, and reservoirs, and providing that any permission given by the Secretary may be revoked by him or his successor, in his discretion, and shall not be held to confer any right, easement, or interest to or over any public lands, one constructing a plant on the public domain for the generation of electricity under permission from the Secretary, given pursuant to the act, has no more than a revocable permit.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 19.]

3. WATERS AND WATER COURSES ☜27—PUBLIC DOMAIN—GRANTS OF RIGHTS OF WAY.

While the act does not indicate the burdens that may be imposed for the use of the permit, and clearly does not contemplate full compensation for the privilege to be enjoyed, yet the Secretary may exact a sum needful for the proper protection of the government's interest in the public domain, but the exaction cannot be graduated according to the amount of electrical energy produced, and hence defendant's refusal to pay an exaction based on the amount of electricity produced does not warrant the forfeiture of its rights, even though the imposition was reasonable; the statute leaving a doubtful field of action.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 19.]

4. WATERS AND WATER COURSES ☜27—PUBLIC DOMAIN—GRANTS OF RIGHTS OF WAY.

While the Secretary of the Interior may in his discretion revoke the permission given under the act, such discretion cannot be exercised arbitrarily and without just cause; such exercise of discretion being invalid.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 19.]

5. WATERS AND WATER COURSES ☜27—PUBLIC DOMAIN—GRANTS OF RIGHTS OF WAY.

The rights given an electrical company to construct on the public domain a plant for the generation of electricity cannot be revoked because the company, instead of carrying the water in ditches, in accordance with the application, constructed a tunnel in solid rock for that purpose; the country being inaccessible and unfit for any other purpose, and a tunnel being more satisfactory than an open ditch.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 19.]

In Equity. Bill by the United States against the Colorado Power Company, a corporation. Order nisi entered, granting defendant 60 days in which to make payments, failing in which, decree will be entered as prayed.

Harry B. Tedrow, U. S. Dist. Atty., of Denver, Colo., and Ethelbert Ward, Sp. Asst. Atty. Gen., for the United States.

Wm. V. Hodges, of Denver, Colo., for defendant.

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

LEWIS, District Judge. The defendant owns and operates an hydro-electric plant in Garfield County. It consists of a dam which diverts the waters from Grand river into a tunnel excavated through solid rock, a pressure pipe which receives the flow at the lower end of the tunnel, extending thence to the power house where the electric current is generated, and, in addition to the power house, several other buildings nearby used in connection with operating the plant.

All of the property and plant, except a part of the diverting dam, is situate on the public domain. The country is rugged and mountainous, and the distance from the dam to the power house is about two and a half miles through a deep cañon, having high precipitous and barren walls on either side of the river.

The bill seeks to have the entire plant and appurtenant structures removed as a purpresture and public nuisance, on the claim that it is on the complainant's lands without present right. It discloses that the defendant went in and constructed the plant under a permit granted to one De Remer and associates by the Secretary of the Interior on August 20, 1903, under the Act of February 15, 1901 (31 Stat. 790); that thereafter in January, 1907, the rights of De Remer and associates were transferred, with the acquiescence and consent of the Secretary of the Interior, to the defendant, or its predecessor, and that thereafter in 1909 the Secretary of the Interior and the Secretary of Agriculture canceled and revoked the permit.

Some basis for the action of the two secretaries is claimed on account of the fact that, as it is alleged, the defendant did not keep the letter of the De Remer permit in constructing a tunnel for the flow rather than carrying the water in an open ditch, and further because the line of the tunnel departed from that of the open ditch, both disclosed on the map presented to the land office with the De Remer application; but this claim seems to be more of form than substance.

The pleadings do not disclose the real cause of the controversy. After the plant was completed at great expense the Secretary claimed the right, under the said Act of February 15, 1901, to impose certain sums as annual charges against the defendant, based upon the amount of current generated. The exaction was not to the defendant's liking; it not only refused to pay, but denied the right of the Secretary to make the charge. Its attitude is twofold: First, lack of authority under the Act of February, 1901, to require payment; and, second, the assertion by the defendant that its right to remain upon the premises and operate its plant was not measured by the Act of February, 1901, but that it had acquired a perpetual easement under the Act of July 26, 1866 (14 Stat. 251, c. 262) and the Act of July 9, 1870 (16 Stat. 217, c. 235), and further that said two mentioned Acts, read and considered in connection with the Act of February, 1901, and other acts treating generally of the same subject-matter, gave to the defendant more than a revocable permit and that it was not subject to the exaction. This attitude brought about the alleged cancellation of the permit theretofore issued.

[1] We state briefly the reasons which impel us to the conclusion that the defendant's rights are fixed and determined by the Act of February 15, 1901, alone: (1) When De Remer and associates made

their written application in July, 1902, they expressly asked for "the benefits of the Act approved February 15, 1901," "with respect to permission to the use of the right of way hereby applied for." And thereafter the Secretary of the Interior on August 20, 1903, in granting the permission applied for, expressed his consent thus:

"The use of the right of way shown on this map is hereby permitted in accordance with the provisions of the Act of February 15, 1901—31 Stat. 790— and the regulations present or future thereunder."

After De Remer and associates had spent several thousand dollars on the venture under the permission thus given them, the defendant's predecessor took over, with the consent and approval of the Secretary, the rights theretofore given, and the plant was thereupon with reasonable diligence completed.

There was not only no claim under any other statute to occupy complainant's premises, but the express understanding and agreement at the time was that the only right claimed was that granted by the Act of February, 1901; nor was any claim or right asserted under any other statute, so far as the record shows, until long after the completion of the plant.

[2] In July, 1902, the Grand River Power & Transmission Company made an application under the same Act of February, 1901, for the same character of right made by De Remer and in the same locality. This right was approved and granted by the Secretary in the same terms as the one granted to De Remer. The defendant also took over the rights so granted to the Grand River Power & Transmission Company, with the consent of the Secretary. Of course, it obtained no greater right under the one than the other. It cannot now be heard to say that its rights are any other or greater than those given by the statute which the parties invoked and under which the permit was expressly given; and (2) the opinion of the Circuit Court of Appeals for this circuit in United States v. Utah Power & Light Company, 209 Fed. 554, 126 C. C. A. 376, does not leave the question open for debate in this court. The reasoning of the court in that case applies with more aptness and force to the Act of February 15, 1901, than to the Act there under consideration; and it cannot be doubted that the conclusion reached there should be applied here. For these reasons we must measure the rights and obligations of the defendant by the Act of February, 1901. That Act authorized and empowered the Secretary of the Interior "under general regulations to be fixed by him, to permit the use of rights of way through the public lands, forest and other reservations of the United States" for electrical plants, poles and lines for the generation and distribution of electrical power, and for canals, ditches, pipes and pipe lines, flumes, tunnels or other water conduits, and for water plants, dams and reservoirs:

"And Provided further, That any permission given by the Secretary of the Interior under the provisions of this Act may be revoked by him or by his successor in his discretion, and shall not be held to confer any right, or easement, or interest in, to, or over any public land, reservation, or park."

The statute is clear. The defendant never had more than a revocable permit.

[3] The Act in no manner indicates the burdens that may be imposed for the use of the permit or the character of the exactions that the Secretary may require of the permittee. He is empowered to permit the use of the rights specified under general regulations to be fixed by him. The undoubted intent and purpose was to clothe the Secretary with the right and duty to safeguard the interests of the complainant in the premises, and thus to burden the exercise of the permit with such restrictions and exactions as might be reasonably necessary to effectuate that purpose. On letting the permittee in it would seem to be clearly within the Secretary's power to require some guarantee or agreement against waste, not only of the particular property to be enjoyed but also of contiguous portions of the public domain and against trespassing upon the same and unnecessary damages that might be brought about in getting in and out. And while the Act clearly does not contemplate full compensation for the privilege to be enjoyed, otherwise it would have said so, still it seems reasonable that the power should include the right to exact a sum needful for the proper protection of the complainant's interests. Congress did not manifest any intent to give the Secretary the right and power to acquire for complainant an interest, directly or indirectly, in defendant's plant or business, nor to lay a tax on its product; and to put the defendant's business under public surveillance and thus subject it to examination as to the amount of electrical energy produced and disposed of, for the purpose of laying tribute thereon as a basis of a charge to be fixed by the Secretary, is to carry the power granted to him to a doubtful length and further than, I think, is given by the Act. The charge made, and to which the defendant objected and refused to pay, was ascertained in that way. There is no present duty or purpose in these expressions to finally determine and adjudicate the limit of power in this regard, further than to say that the statute left a doubtful field of action for both sides, and the course taken by the defendant ought not to be construed as a risk of all it had. The average amount thus fixed was approximately $100 per month. There is no proof that this is unreasonable and excessive, and more than necessary in the protection of the complainant's rights; and the manner in which it was fixed is not of present concern, except that it operated as the chief cause for the resistance to the demand. It is enough now to say that I cannot find on the proof that the amount demanded was excessive or unreasonable.

[4] I agree fully with the insistence of defendant that the power given to the Secretary by the Act to revoke at his discretion the permit, cannot be exercised arbitrarily and without just cause. While it is not presumed that the Secretary would in any case take such action, except under the belief that he had the right and power to do so, yet if such action were taken because of a refusal to comply with an exaction made beyond his power, it would be a mere brutum fulmen. There can be no purpose in the Act of dealing unfairly with the permittee and his investment, and its whole purpose contemplates that he shall be protected as long as he complies with reasonable requirements to be ascertained under the general regulations fixed by the Secretary. The rules of law controlling the exercise of discretion are set forth

in the many authorities cited to the point in the defendant's printed brief and it is unnecessary to restate them here.

[5] As already stated, the maps and plats which accompanied the original applications of De Remer and associates and the Grand River Power & Transmission Company disclose that the water was to be carried in open ditches. It also gave the lines or routes of the ditches, whereas it appears in proof that the defendant's structure carries the water through a tunnel excavated in the solid rock for the greater part of the way, and that the route of the tunnel varied, by necessity, from the line of the open ditches, as exhibited on the maps, in some places as much as five hundred feet. The Act authorizes the use of either open ditches or tunnels. The defendant's immediate predecessor at no time constructed or used a ditch to carry the flow, neither did De Remer and associates or the Grand River Power & Transmission Company ever construct, or use a ditch, but beginning with the first work upon the ground the construction of the tunnel was entered upon and vigorously prosecuted to its completion, so that long before there was any difference or controversy between the parties there has been laid out and expended more than two million dollars in the construction and completion of the plant. The tunnel is in solid rock and the surface over and about it is wholly unfit and unsuited to any other use or purpose. It is a more expensive and better conduit than an open flume or ditch and fulfills and complies with the general purpose and understanding of the parties at the time the permits were given. It lies for the greater part of its length in a cañon which is inaccessible, except along the river-bed, and I can find no merit in the complainant's claim of deviation from the original permits.

An order nisi will be entered giving the defendant sixty days in which to make payment in compliance with the demands of the Secretary, failing in which a decree will then be entered as prayed in the bill.

It is so ordered.