[No. 13773.   Department One.   June 18, 1917.]

A. A. CRANE, *Appellant*, v. WASHINGTON WATER POWER
COMPANY, *Respondent*.[1]

ATTORNEY AND CLIENT—CONTRACT OF EMPLOYMENT—CONSTRUCTION —PERFORMANCE. Under an attorney's contract to secure a permit from the United States to flood certain lands under the act of February 15, 1901, 31 Stat. L. 790, which provided that such permission should not vest any right or interest in public land and could be revoked by the Secretary of the Interior at his discretion, for which service the attorney was to receive $25,000, with a further provision for additional compensation in the sum of $25,000 if the attorney should within three years procure and cause to be vested the "perpetual right, power and authority to flood the land," the additional compensation is not earned by procuring a revocable permit under the act of February 15, 1901, but the last clause contemplates a greater right than that obtainable under that act.

SAME. In such a case, the attorney was not prevented from performing the contract as to the perpetual right by the fact that, after the permit obtained by him was revoked, other attorneys were employed to get the permit restored.

APPEAL—REVIEW—SCOPE—RECORD. Where a demurrer to a complaint was sustained and the defendant refused to plead further and appealed, the appellate court cannot permit the filing of, and consider, pleadings in other cases or permit an amendment to the complaint.

Appeal from a judgment of the superior court for Spokane county, Blake J., entered August 21, 1916, upon sustaining

[1]Reported in 165 Pac. 892.

a demurrer to the complaint, dismissing an action on contract. Affirmed.

*Robertson & Miller, F. D. Crane,* and *Isham N. Smith,* for appellant.

*Post, Russell, Carey & Higgins,* for respondent.

MAIN, J.—The purpose of this action was to recover an attorney's fee in the sum of $25,000, alleged to be due upon a written contract. To the fourth amended complaint, a demurrer was interposed and sustained. The plaintiff refused to plead further, and elected to stand upon this amended complaint. Thereupon judgment was entered dismissing the action, from which the appeal is prosecuted.

The complaint is too voluminous to be here set out in full, but the controlling facts therein stated may be summarized as follows:

The appellant is an attorney at law, duly licensed under the laws of the state of Idaho, and residing in that state. The respondent is a corporation, organized and existing under and by virtue of the laws of the state of Washington, and is a public service corporation, owning and operating certain electric light and power plants in the city of Spokane, and at Post Falls, Idaho. Immediately prior to the year 1908, the respondent had constructed, or had in the course of construction, a dam at Post Falls, Idaho, by which to impound the waters of the Spokane river and Lake Coeur d'Alene. Much of the land around the shore line of the lake and along the tributaries adjacent thereto was low, which the impounding of the water would cause to be inundated. Before the respondent would have a right to overflow a considerable portion of the land, it was necessary to secure a permit from the Secretary of the Interior authorizing the overflow of the lands belonging to the Federal government. For the purpose of securing this permit from the Federal government, a contract between the parties was entered into, as follows:

"It is hereby agreed by and between the Washington Water Power Company with A. A. Crane, that if the said Crane shall, within six months from the date hereof, to the satisfaction and approval of counsel and attorneys for said company at Spokane, Washington, procure and cause to be vested in said company, license, power and authority from the United States through its Secretary of the Interior, to back and hold water upon and flood and overflow with water so much of the Coeur d'Alene Indian Reservation in the state of Idaho, and also any lands in any National or Government park within the exterior boundaries of said reservation as said boundaries existed January 1, 1908, as are below an elevation of two thousand one hundred and twenty-eight feet above mean sea level, including all mounds, raises, hills and elevations within the exterior boundaries of said elevation of twenty-one hundred and twenty-eight feet, which said right to flood and overflow the said lands and to have and maintain as a reservoir, shall conform to and be granted under that certain act entitled, 'An Act Relating to Rights of Way Through Certain Parks, Reservations and Other Public Lands,' approved February 15, 1901, and contained in 31 Statutes at Large at page 790; and any other act or law of the United States which may be applicable; then, and in those events, said the Washington Water Power Company shall and will pay to said Crane the sum of twenty-five thousand dollars, or so much thereof as remains after paying any and all claims, demands and charges which said company may see fit to pay and which may have to be paid to secure said rights from the United States or Indians or any Indian, or any other person on said reservation having or claiming to have any valid or legal interest in said lands, or any part thereof; but no amount shall be paid on this contract as herein provided, by the Washington Water Power Company other than such as may be necessary to be paid to the United States and fees legally collectible by the officers of the United States, except on and with approval of said Crane.

"Said sum of $25,000, or any part thereof, shall not be due or payable, except upon the written certificate of said Spokane attorneys of said company, which certificate shall be given and payment made to said Crane, within sixty days after full compliance with this contract by said Crane; pro-

vided said Crane shall fully comply with all the terms hereof within three years from the date of this contract.

"The said Crane agrees to use his best efforts to secure the aforesaid rights as to, upon and over the whole of the lands hereinbefore mentioned and to transfer, or cause the same to be transferred to said company, its successors or assigns, as soon as secured.

"If said Crane shall not secure said rights and the whole thereof, as and when herein provided, said The Washington Water Power Company shall not be liable to said Crane, or any other person, for any sum or amount whatever.

"It is further agreed that if the said Crane shall, within three years from the date hereof, to the satisfaction and approval of counsel and attorneys of said company at Spokane, Washington, procure and cause to be vested in said company the perpetual right, power and authority to back and hold water upon and flood and overflow and to maintain reservoir upon and over the land hereinbefore described, then and in that event the said The Washington Water Power Company shall pay the said Crane the further sum of twenty-five thousand dollars, payable on the certificate of counsel and attorneys of the Washington Water Power Company as hereinbefore provided with reference to the other payment hereinbefore agreed to be made upon the conditions and provisions hereinbefore set forth.

"Dated at Spokane, Washington, this 22nd day of December, 1908."

After this contract was entered into, the appellant proceeded to the city of Washington, D. C., and there, as attorney for the respondent, made application to the department of the interior, and through the office of Indian affairs, for a permit to enable the respondent to overflow the lands mentioned in the contract, under the provisions of the Act of Congress of February 15, 1901, as provided in the contract. On February 2, 1909, the Secretary of the Interior, after a hearing and proceedings had through the office of Indian affairs, issued a permit authorizing the respondent to overflow the lands mentioned, but requiring, as a consideration therefor, that certain Indians, who were occupants of the lands, be paid for damages sustained by reason of the over-

flow waters at the rate of $1.25 per acre. More than $7,500 was paid to the United States for the benefit of the Indians, the same being taken from the first $25,000 mentioned in the contract. After the right to overflow was granted, the Department of the Interior, in issuing patents by the United States to entrymen under the homestead laws, inserted a clause therein that such lands were subject to the rights of the Washington Water Power Company under the permit theretofore issued. It is alleged that, in securing the grant or permit above mentioned from the United States, through the Secretary of the Interior, the appellant has caused to be vested in the respondent "perpetual right, power and authority" to flood and overflow the lands covered by the permit. Sometime after the permit had been issued, the Department of the Interior required the Washington Water Power Company to show cause why its grant or permit should not be revoked. Thereafter, a hearing was had by the Department of the Interior, and on July 29, 1910, an order was entered revoking the permit. On the 22d day of April, 1912, the Secretary of the Interior entered an order setting aside the previous revocation, holding that the same was arbitrary and unjustifiable and there did not appear to be any sufficient reason for the revocation. While the matter was proceeding in the Department of the Interior, on an application to set aside the previous revocation of the permit, the respondent substituted other attorneys for the appellant in that proceeding.

The first question is whether the appellant had done all that he was required to do under the written contract in order to recover the second $25,000 mentioned therein. There is no controversy here over the first $25,000, as that has already been paid. A careful reading of the contract discloses that, by the terms thereof, the appellant was to do two things, the first being to procure and cause to be vested in the respondent, "license, power and authority" from the United States, through the Secretary of the Interior, to flood

or overflow certain lands, which permit was to "conform to and be granted under that certain act entitled, 'An Act Relating to Rights of Way Through Certain Parks, Reservations and Other Public Lands,' approved February 15, 1901, and contained in 31 Statutes at Large at page 790; and any other act or law of the United States which may be applicable." The other thing which the appellant was authorized to do under the contract is contained in the last paragraph thereof, and was that, if within three years he should procure and cause to be vested in the respondent "the perpetual right, power and authority to back and hold water upon and flood and overflow" the land before described, he should be paid the sum of $25,000.

It is not claimed that the appellant caused any permit to be issued other than that above mentioned, which was issued under the act of February 15, 1901, but it is claimed that this permit vested in the respondent the perpetual right, power and authority to flood the lands mentioned. By the act of February 15, 1901, it is provided that the Secretary of the Interior is authorized and empowered, under general regulations to be fixed by him, to permit the use of rights of way through the public lands, forest and other reservations of the United States for electrical plants, poles, and lines for the generation and distribution of electrical power, etc. This act contains the proviso "that any permission given by the Secretary of the Interior under the provisions of this act may be revoked by him or his successor in his discretion, and shall not be held to confer any right, or easement, or interest in, to, or over any public land, reservation, or park." It seems plain that a permit to flood lands, issued under this act of Congress, would not, and could not, confer a perpetual right to flood or overflow land. The proviso quoted gives the Secretary of the Interior authority to revoke in his discretion, and provides that any permit issued thereunder shall not confer any right, or easement, or interest in, to, or over any public land. A right subject to these limitations could not

well be considered perpetual. It is argued, however, that the word "perpetual" must be given a meaning which the parties to the contract intended, having regard to the subject-matter thereof and the surrounding facts and circumstances, and this proposition cannot well be disputed.

Looking again to the contract, it first provided for license, power and authority from the United States to flood the land, which should be issued under the act of February 15, 1901, and fixed the compensation for that service. It will be noticed that, in this part of the contract, the word "perpetual" is not mentioned. In the second part of the contract, which is found in the last paragraph, an additional compensation in the sum of $25,000 is to be paid, provided the appellant, within three years from the date of the making of the contract, should procure and cause to be vested in the respondent the "perpetual right, power and authority" to flood the land. This would indicate that, in order to earn the second $25,000 mentioned, the appellant was to secure a greater right than could be obtained under the act of February 15, 1901. It was obviously not the intention of the parties, at the time the contract was executed, that the $25,000 mentioned in the last paragraph should become due when a permit should be issued by the department of the interior under the act of February 15, 1901.

Some mention is made in the briefs of § 2339, United States Compiled Statutes, but it was held in *United States v. Utah Power & Light Co.*, 209 Fed. 554, and *Utah Power & Light Co. v. United States*, 230 Fed. 328, by the circuit court of appeals for the eighth circuit, that that section of the revised statutes is not applicable where the right to burden public lands involves the generation, manufacture, or distribution of electric power. The appellant, not having caused the perpetual right to flood the land to be vested in the respondent, as mentioned in the last paragraph of the contract, is not entitled to the $25,000 which was to be paid him if he secured that right, unless he has been prevented from per-

forming that part of the contract by the respondent. It is alleged, as above stated, that, after the permit was issued and revoked, and while the cause was pending in the Department of the Interior seeking restoration of the permit and the setting aside of the revocation, other attorneys were substituted for the appellant in that proceeding, but this would not prevent the appellant from proceeding under the last paragraph of the contract, which involved the perpetual right.

The permit, as finally sustained by the Department of the Interior, was under the act of February 15, 1901, and, as already stated, in our opinion, did not vest in the respondent a perpetual right. Had the appellant been permitted to handle the litigation which resulted in sustaining the permit and setting aside the previous revocation, he would have been in no different position than he now is. Not having secured the perpetual right as provided for in the concluding paragraph in the contract, and not having been prevented from performing that part of the contract by any act of the respondent, the service for which the $25,000 there mentioned was to be compensation has not been rendered and no recovery can be had therefor.

In the reply brief two cases are referred to which had been instituted in the district court of the United States for the district of Idaho, central division, in each of which the Washington Water Power Company, the respondent here, was defendant, and request is made for permission to file and have the court consider certified copies of the pleadings in those cases, and in the event that this request is denied, that the appellant be permitted to amend his fourth amended complaint. To sustain either of these requests would be to adopt a procedure unknown to the laws of this state. When the trial court sustained the demurrer to the fourth amended complaint, the appellant refused to plead further and elected to stand thereon, and brought the matter to this court by appeal for the purpose of reviewing the ruling of the trial court.

Whether the judgment of the trial court is right must be determined from the facts alleged in the complaint, and these can neither be enlarged nor modified by any facts that may appear in the pleadings in the two cases mentioned.  The request to file will be denied, and also the request to permit in this court an amendment to the fourth amended complaint. While it is not material, it may be said that the apparent purpose of the request to file the papers or to amend was to get before this court the fact that, in the Federal court, where those actions are pending, the respondent had taken a different position upon the law from that it here takes, but if the respondent here (defendant in those cases) there took an unsound position upon the law, that would not be a good reason to deny it the right here to urge a correct view of the law.

The judgment will be affirmed.          ·

ELLIS, C. J., CHADWICK, MORRIS, and WEBSTER, JJ., concur.